# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAULA MORENO,

    Plaintiff,

v.

KANSAS CITY STEAK COMPANY, LLC,

    Defendant.

Case No. 17-cv-02029-DDC-KGS

## MEMORANDUM AND ORDER

On January 17, 2017, plaintiff Paula Moreno filed a Complaint alleging four claims against defendant Kansas City Steak Company, LLC. Doc. 1. In Counts One through Three, plaintiff asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* In Count Four, plaintiff asserts a claim under the Kansas Workers Compensation Act, Kan. Stat. Ann. § 44-501 *et seq.*

On April 7, 2017, defendant filed a Motion for Partial Dismissal of Plaintiff's Complaint. Doc. 6. In it, defendant contends that the court must dismiss Counts One through Three because plaintiff failed to exhaust her administrative remedies. The court agrees. For the reasons explained below, the court denies defendant's Motion for Partial Dismissal of Plaintiff's Complaint and also grants plaintiff leave to file an amended complaint. The amended pleading must address the jurisdictional issues addressed in this Order.

## **Background**[1]

Plaintiff worked for defendant from March 2009 to March 2015. In April 2012, plaintiff's work gloves caught in a conveyor belt, injuring the smallest finger on her right hand to

---

[1] The facts in this section come from plaintiff's Complaint and the documents attached to her Complaint as Exhibit A. The court explains why it relies only on these documents below at pp. 7–9.

the point that one of the joints was immovable.  Plaintiff received medical attention for her injury through workers compensation benefits, and began using a splint at work per her doctor's orders.

Over time, plaintiff's injury worsened.  She began experiencing intermittent muscle and tendon pain in her right hand, wrist, and forearm.  Eventually, the pain spread to her shoulder.  Worker's compensation again allowed plaintiff to seek medical attention.  But, when plaintiff's treating physician advised her to see a hand specialist, defendant refused and would not allow her to seek further treatment.  Plaintiff told defendant about her continuing pain and discomfort several times between 2012 and 2014.

Plaintiff's supervisor questioned whether plaintiff truly was injured and the supervisor got angry with her.  Plaintiff's supervisor physically pushed plaintiff twice, "yelling at [her] for using her left hand instead of her injured right hand."  Doc. 1 at 5.  Some time later, plaintiff went to human resources to inform them of the pushing incident and to complain, again, about her continuing injury.  Plaintiff alleges that human resources told her "that if she made a report she would not be able to work for" defendant.  *Id.*

On March 26, 2015, following another unpleasant interaction between plaintiff and her supervisor, defendant terminated plaintiff's employment.  Believing she was terminated for discriminatory reasons, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("the EEOC") and the Kansas Human Rights Commission ("the KHRC").  Where her KHRC Charge ("the Charge") asks what "unlawful employment practice" she alleged defendant employed in violation of the Kansas Acts Against Discrimination, Kan. Stat. Ann. § 44-1001 *et seq.*, plaintiff checked the boxes for race, color, national origin, disability, and retaliation.  Doc. 2 at 4.

Plaintiff's Charge alleged only the following facts:  she worked for defendant from March 16, 2009, to March 27, 2015, and her last position was in packaging; she is from Mexico; her son has a disability; defendant knew about her son's disability starting in March 2009; her supervisor physically harassed her on December 23, 2014, by pushing her twice; and that defendant terminated her employment on March 27, 2015, because of her national origin and her "association with [her] son, who has a disability." *Id.* at 4–5.

The EEOC issued plaintiff a Right to Sue Letter on October 20, 2016.  She then filed this lawsuit.  Her Complaint alleges that defendant violated the ADA by failing to accommodate her disability (*i.e.*, her injured finger), by retaliating against her for seeking accommodations, and by physically harassing her and disciplining her because of her disability.  The Complaint also alleges a retaliation claim under the Kansas Workers Compensation Act.

Defendant has filed a Motion for Partial Dismissal.  In its Motion, defendant contends that plaintiff's ADA claims exceed the scope of her Charge, and so plaintiff has failed to exhaust her administrative remedies as the ADA requires.  The court considers the parties' arguments below.

## **Analysis**

Defendant's Memorandum in Support its Motion (Doc. 7) and Reply (Doc. 10) present a threshold procedural question that the court must decide before it can begin to analyze the parties' arguments. While defendant labels its motion to dismiss as one under Federal Rule of Civil Procedure 12(b)(6), the legal standards section of its Memorandum in Support begins with the following propositions: "Federal courts are courts of limited jurisdiction.  Under the ADA, a plaintiff must exhaust administrative remedies before filing suit.  'In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.'  Thus, a district

court must dismiss unexhausted claims for lack of subject matter jurisdiction." Doc. 7 at 4 (citations omitted). This language invokes Rule 12(b)(1). Defendant then continues, mentioning—albeit briefly—the legal standard for a Rule 12(b)(6) motion. Defendant's Reply does not clarify its intentions. *See* Doc. 10 at 8 ("KCSC argues that Plaintiff did not exhaust her administrative remedies at all—whether her Charge was verified or not—with respect to any claims based on her own disability, which clearly is a jurisdictional requirement." (citation omitted)). So, defendant's papers alone do not permit the court to discern whether defendant brings a Rule 12(b)(1) or Rule 12(b)(6) motion.

But the court must determine which subdivision of the Rule applies because "[d]ifferent standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). If the question presented by defendant's motion truly is a jurisdictional one,[2] then the court may not reach any aspect of the merits of plaintiff's Complaint under a Rule 12(b)(6) motion. As the Supreme Court explained in *Bell v. Hood*:

> [I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.

327 U.S. 678, 682 (1946); *accord Oppenheim v. Sterling*, 368 F.2d 516, 520 n.16 (10th Cir. 1966). So, typically, the court may dismiss a complaint for failing to state a claim for relief only

---

[2] Although some Tenth Circuit cases hold that characterizing an exhaustion requirement as jurisdictional is important "only when the defendant has waived or forfeited the issue," *McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007), those cases do not consider whether Rule 12(b)(1) or 12(b)(6) applies and thus they are not on point here. *See, e.g.*, *Hung Thai Pham v. James*, 630 F. App'x 735, 738 (10th Cir. 2015) (reciting the above quote after stating that the Circuit reviewed Rule 12(b)(1) dismissals de novo, in a case where the Circuit had no need to consider whether the motion to dismiss should be considered under Rule 12(b)(1) or Rule 12(b)(6)).

after it has found that subject matter jurisdiction exists. *Id.* The court thus must determine whether defendant's motion presents a motion to dismiss under Rule 12(b)(6) or Rule 12(b)(1) before it properly can consider any aspect of the parties' merit arguments. *See Muscogee (Creek) Nation*, 669 F.3d at 1167 (holding that a district court erred by equating the Rule 12(b)(6) and Rule 12(b)(1) standards when it applied the Rule 12(b)(6) plausibility standard to the determination whether it had subject matter jurisdiction).

Despite the Rule 12(b)(6) label defendant places on its Motion to Dismiss, the court must construe it as a motion under Rule 12(b)(1) if the question it presents is jurisdictional. In other words, if the question whether the court should dismiss plaintiff's Complaint for failure to exhaust her administrative remedies is jurisdictional, then the court must consider defendant's motion as one under Rule 12(b)(1). To decide this question, the court relies on ADA and Title VII cases because, as the Tenth Circuit has noted, "Title I of the ADA, which prohibits employment discrimination on the basis of disability, explicitly incorporates the powers, remedies, and procedures of Title VII, making [it] clear that the procedural requirements of those two provisions must be construed identically." *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) (citing 42 U.S.C. § 12117(a)).

In *Shikles v. Sprint/United Management Co.*, the Tenth Circuit held that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit." *Id.* at 1317 (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996)). In the years after *Shikles*, the Circuit has questioned the vitality of the case's holding. *See, e.g.*, *Wickware v. Manville*, 676 F. App'x 753, 767 & n.4 (10th Cir. 2017) (mentioning that the holding in *Shikles* may not be good law still, but not resolving the question and instead stating that "[c]onsequently, even if exhaustion is not

jurisdictional, it is a condition precedent to suit" (citations omitted)); *Hung Thai Pham*, 630 F. App'x at 737–38 (discussing whether *Shikles*'s holding was still good law, but declining to decide the issue and noting instead that "even if exhaustion is not jurisdictional, this Title VII requirement is vital," so "even if the exhaustion requirement is deemed to be a condition precedent to suit, we conclude that by indisputably failing to exhaust, Mr. Pham has failed to satisfy this condition" (citations omitted)); *Arabalo v. City of Denver*, 625 F. App'x 851, 859–60, 864 (10th Cir. 2015) (mentioning that the holding of *Shikles* may not be good law still, but not resolving the question). The questions about the continuing vitality of *Shikles* arise from the Tenth Circuit's decision in *Gad v. Kansas State University*, 787 F.3d 1032 (10th Cir. 2015). But *Gad* did not overrule *Shikles*—at least not explicitly. Instead, the Circuit's decision in *Gad* appears limited to the question before it in that case: whether the EEOC's verification requirement is jurisdictional. *Gad*, 787 F.3d at 1038–40.

Although the court is mindful of concerns about *Shikles*'s status after *Gad*, "[t]his court is bound by the published Tenth Circuit decisions unless they have been overruled by the Tenth Circuit sitting *en banc* or superseded by a contrary Supreme Court decision." *Brand v. Mazda Motor Corp.*, 978 F. Supp. 1382, 1392 (D. Kan. 1997) (first citing *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996); then citing *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990); then citing *Morris v. State of Kan. Dep't of Revenue*, 849 F. Supp. 1421, 1428 (D. Kan. 1994), *abrogated on other grounds*, *Burns v. Bd. of Comm'rs of Cty. of Jackson, Kan.*, 197 F. Supp. 2d 1278 (D. Kan. 2002)). The Tenth Circuit has not overruled *Shikles* en banc, and the Supreme Court has not decided a case explicitly contrary to *Shikles*'s holding. So, the court believes it is still bound to follow *Shikles*'s holding.

The court thus concludes that defendant's motion to dismiss, in reality, is a Rule 12(b)(1) motion and so it considers defendant's motion under the legal standard outlined in the next section.

I.  **Legal Standard**

The court must dismiss any case that it lacks subject matter jurisdiction to hear. Fed. R. Civ. P. 12(h)(3). The court must do so because "[a] court lacking jurisdiction cannot render judgment." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citing *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir. 1962)). The party who invokes the court's jurisdiction bears the burden to establish that it exists. *Id.* Here, that party is plaintiff.

Generally, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial attack questions the sufficiency of the jurisdictional allegations in a plaintiff's complaint. *Id.* "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). In contrast, a factual attack goes beyond the complaint's allegations and challenges "the facts upon which subject matter jurisdiction depends." *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citing *Ohio Nat'l Life Ins. Co.*, 922 F.3d at 325). In this context, a district "court has wide discretion to allow affidavits, other documents, and [even conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citations omitted). So, "[i]n a factual attack under Rule 12(b)(1), the court's reference to evidence outside the pleadings does not convert the motion into a motion for summary judgment, unless the jurisdictional question is

intertwined with the merits of the case." *Shipley v. I.R.S.*, No. 04-cv-2573-JWL, 2005 WL 1334617, at *1 (D. Kan. June 6, 2005) (first citing *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); then citing *Holt*, 46 F.3d at 1003; then citing *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987)); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002).

Here, some question exists whether defendant's motion presents a facial or factual attack. Plaintiff contends that defendant's motion strays beyond the Complaint and thus questions facts. Defendant disagrees. It contends that its motion only questions the sufficiency of the Complaint's jurisdictional allegations. In reality, defendant's motion melds the two approaches.

At first glance, it looks like a factual attack. Defendant attaches an exhibit to its Memorandum in Support. Doc. 7-1. Typically, this approach signals that defendant is making a factual attack challenging the complaint's jurisdictional allegations. *Cf. Shipley*, 2005 WL 1334617, at *1 ("Here, Defendant chose to make a factual attack by offering exhibits [to] support its motion." (footnote and citation omitted)). But here, closer inspection leads the court to a different conclusion.

The exhibit attached to defendant's Memorandum in Support does not challenge any of the Complaint's jurisdictional allegations. Instead, the exhibit merely submits plaintiff's EEOC and KHRC administrative charges. *See* Doc. 7-1; *see also* Doc. 1 at 6–7 (referencing exhibits to the Complaint). But defendant's motion relies only on plaintiff's KHRC Charge and plaintiff already had appended this Charge as an exhibit to her Complaint. Doc. 2 at 4–5 ("EXHIBITS IN SUPPORT of Complaint") (filed by plaintiff). Federal Rule 10(c) makes that exhibit part of plaintiff's Complaint. *See Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1382 (10th Cir. 1978) ("We first observe that any contention that a substantial federal question was not set forth

'on the face' of the Mountain Fuel complaint is without merit. [Rule 10(c)] provides that 'A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" (citations omitted)); *accord City of Rome, N.Y. v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 175 n.4 (2d Cir. 2004). Plaintiff's EEOC Charge is not part of her Complaint. She did not attach it to the Complaint and objects to defendant's reliance on it here. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (listing exceptions to the rule against looking beyond the four corners of the pleadings). But, defendant does not rely on plaintiff's EEOC Charge.

Because defendant's motion does not rely on any material outside the pleadings, it presents a facial attack. This conclusion means that the court applies "the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). So, the court accepts the allegations in plaintiff's Complaint as true. But, where the Complaint's allegations are legal conclusions or contradict information contained in the documents attached to it, no such presumption of truth attaches. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (explaining that the court need not accept "legal conclusions and factual allegations that contradict . . . a properly considered document" as true (citing *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972))).

Last, plaintiff's decision to attach the EEOC's Right to Sue Letter and her KHRC Charge to her Complaint provides something of a governor on the Complaint's allegations. In *GFF Corp. v. Associated Wholesale Grocers, Inc.*, the Circuit explained that district courts need not accept factual allegations as true if they contradict a "properly considered document." *Id.* (citation omitted).

**II. Exhaustion**

"Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (citations omitted). To determine whether a plaintiff has exhausted her administrative remedies, the court uses a two-step test. *Id.* at 1183, 1186. In the first step, the court asks whether the plaintiff has filed a charge of discrimination with the EEOC. *Id.* at 1183. In the second, the court must "determine the scope of the allegations raised in the EEOC charge because '[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Id.* at 1186 (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); further citation omitted). Here, defendant concedes that plaintiff has satisfied step one. But, defendant contends that her ADA claims cannot survive step two.

In step two, the court liberally construes plaintiff's Charge. *Id.* But, plaintiff's Charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation 'constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.'" *Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)). So, the court's inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge." *Id.* (emphasis in original).

Here, plaintiff principally submitted her charge of discrimination to a state administrative agency—the KHRC. *See* Doc. 7-1 at 3–4 (assigned KHRC docket No. 38214-16). She then

provided notice to the EEOC of her state charge filing, notifying this federal agency that her federal submission was made under the EECO's "dual filing" procedure. *Id.* at 2.[3]

Plaintiff's KHRC Charge identified the "unlawful employment practice" that she alleged defendant had committed. Plaintiff checked the boxes identifying race, color, national origin, disability, and retaliation as the types of discrimination claimed. Doc. 2 at 4. Plaintiff's Charge alleged only the following facts: she worked for defendant from March 16, 2009, to March 27, 2015, and her last position was in packaging; she is from Mexico; her son has a disability; defendant knew about her son's disability starting in March 2009; her supervisor physically harassed her on December 23, 2014, by pushing her twice; and that defendant terminated her employment on March 27, 2015, because of her national origin and her "association with [her] son, who has a disability." *Id.* at 4–5.

In her Complaint, plaintiff alleges three claims under the ADA. She bases all three claims on her own disability—which was caused by a workplace injury in April 2012. This Complaint never mentions her son. Plaintiff's Charge exhausted only an ADA claim based on her association with her son's disability. But her Charge never alleges that she, herself, has a disability, or that she suffered adverse employment actions because of her disability. Her Charge therefore does not contain facts about the discrete incident of discrimination and retaliation relied on by Counts One through Three of her Complaint. No "administrative investigation [could] reasonably be expected to follow from" plaintiff's administrative allegations about her son's disability to plaintiff's judicial allegations that she was disabled. *Jones*, 502 F.3d at 1183, 1186;

---

[3] This dual filing procedure allows a person claiming that an employer has discriminated on a legally forbidden basis to commence proceedings with a state agency charged with administrative review of such claims. When an employee chooses to present a claim of discrimination in this fashion, the EEOC "may suspend its investigation and await the [state] Agency's final findings and orders." Doc. 7-1 at 1. The EEOC then may consider the state agency's findings and give them whatever weight the EEOC deems appropriate when making its conclusion. *Id.*; *see also EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110–12 (1988) (discussing the dual filing process and work-sharing agreements between state agencies and the EEOC).

*see also Andrews v. GEO Grp., Inc.*, 288 F. App'x 514, 518 (10th Cir. 2008) (finding that the plaintiff did not exhaust her job-modification claims because her administrative "filing [was] devoid of any facts concerning such a request").

Sensing her predicament, plaintiff asks the court to consider, in addition to her Charge, a disability questionnaire that she filled out after filing her Charge with the KHRC. Defendant objects to plaintiff's use of the questionnaire, arguing that the court cannot consider the questionnaire without converting defendant's motion into one for summary judgment. This argument creates a dilemma that the court cannot resolve from the current record. On one hand, defendant argues, correctly, that the court cannot consider the contents of the administrative questionnaire because plaintiff's Complaint does not allege it or otherwise invoke it under Rule 10(c). *See Pacheco*, 627 F.3d at 1186 (listing exceptions to the rule against looking beyond the four corners of the pleadings). On the other hand, plaintiff may not have alleged that the questionnaire's contents provided a platform to establish the jurisdictional requisite—administrative exhaustion—because she did not know that defendant would challenge her administrative charge's sufficiency for that requisite.

In the end, the court concludes that it is not proper to resolve this dilemma on the current motion. The parties' filings manifest one dispute, in particular, that leads the court to this conclusion. Plaintiff contends that a KHRC questionnaire establishes that she exhausted her claims based on her own alleged disability. And, indeed, the Circuit's most recent comment on this idea—*Jones v. Needham*—leaves room for this argument to succeed. *See* 856 F.3d 1284, 1290 (10th Cir. 2017) ("[T]here are times in which a different filing such as an intake questionnaire, can constitute [an administrative] charge for certain purposes." (citations omitted)). While the "general rule" remains that the administrative charge defines the scope of

the administrative investigation, *id.*, *Needham* recognizes that exceptions to this general rule still exist. Also, defendant's Reply raises a series of unanswered questions. Did defendant receive the questionnaire before plaintiff filed this lawsuit? And, if not, does that matter?

The court concludes that it should not decide questions so central to the case[4] on a record as unsettled as the one presented by the current motion to dismiss. The court denies the current motion because it concludes that the current record is insufficient to decide the first question in every federal court case: Does subject matter jurisdiction exist? On its own motion, then, the court grants plaintiff leave to amend her Complaint. The court establishes a comprehensive schedule at the end of this order. Plaintiff's amended complaint must plead sufficient material so the court can decide whether its jurisdiction reaches plaintiff's claims. This obligation includes each fact she relies on to establish administrative exhaustion and thus, jurisdiction. If defendant contends that plaintiff's amended allegations do not suffice to establish exhaustion, it may renew its motion to dismiss. If defendant believes the new filing establishes jurisdiction—for the moment, anyway—it should file an Answer. If defendant renews its motion to dismiss, the parties' filings should discuss the implications of the Circuit's decision in *Needham*, a case decided after briefing on the current motion concluded.

The following interim schedule governs the proceedings in this case:

(1) No later than 10 days from the date of this Order, plaintiff must file an amended complaint alleging all facts she relies on to establish subject matter jurisdiction.

---

[4] For example, an order dismissing the case, though not a judgment with claim precluding effects, effectively could end plaintiff's opportunity to present her claims. Federal law does not include a savings statute. *United States ex rel. Koch v. Koch Indus., Inc.*, 188 F.R.D. 617, 632 (N.D. Okla. 1999). So, any new case filing based on enhanced jurisdictional allegations likely would face dismissal as untimely. *See id.* at 632–33 ("A complaint [based on a federal cause of action] cannot be related back to a complaint over which the court lacked subject matter jurisdiction, not because the court lacked subject matter jurisdiction, but because the law deems the first suit to have never in fact existed.").

13

(2) Within 15 days of plaintiff filing her amended complaint, defendant may file a renewed motion to dismiss challenging the jurisdictional sufficiency of plaintiff's amended allegations. If defendant elects not to file such a motion to dismiss, it must file a timely Answer.

(3) Within 15 days of any new motion to dismiss filed by defendant, plaintiff must file her Opposition to the motion.

(4) Defendant must file any Reply within 10 days of plaintiff's Opposition.

Finally, consistent with Rule 1's mandate that the court must apply the Federal Rules of Civil Procedure to promote the just, speedy, and inexpensive resolution of every civil case, the court stays discovery and all other pre-trial proceedings until the jurisdictional questions are resolved. If defendant does not file a renewed motion to dismiss, the parties are directed to notify Deputy Clerk Megan Garrett (by email at KSD_Crabtree_Chambers@ksd.uscourts.gov) so that the court can lift the stay and return the case to normal case-management procedures.

**IT IS THEREFORE ORDERED THAT** defendant Kansas City Steak Company, LLC's Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 6) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff must file an amended complaint within 10 days of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 13th day of July, 2017, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**